Battle, J.
 

 This cause has now come on for a final hearing, and- after a full consideration, we have arrived at the same conclusion with regard to the judgment obtained by the defendant on the bond mentioned in the pleadings, which we expressed when we decided to sustain the injunction, which had been obtained against that j udgment. The decision was made at December Term, 1859, upon a motion, founded on the answer to the bill, for a dissolution, and is reported in 5th Jones’ Eq. 61. The judgment at law is allowed to stand as a security to the defendant for whatever may be found, upou taking an account between the parties, to be justly and fairly due from the plaintiff, as the consideration of the bond, on which the judgment was obtained.
 

 In taking such account, however, the master will not allow the defendant a credit for any article, or articles, sold to the plaintiff, unless, under 'the circumstances, it was proper and necessary for the latter to have it or them. As for instance, the master will be at liberty to enquire, whether the defendant
 
 *338
 
 ought to have furnished the plaintiff with spirituous liquors to the value of $404.25, during nine months of the year 1859*; and if not, he will refuse a credit for whatever he may find to have been an excessive quantity of that article.
 

 Having disposed of the question, raised with respect to the judgment on the bond, we come now to the consideration of that which relates to the deed executed by the plaintiff to the defendant for his land, and all his other property, with the reservation of a life-estate, founded upon the expressed consideration of $2500, in a debt due from the former to the latter, and a covenant by the latter to support the wife of the former, should she become his widow, and so long as she should.continue such. The first enquiry that is presented in this part of the case is, whether before, and at the time when the deed was executed, to wit, the 23rd day of March, 1857, the confidential relation of principal and agent existed between the parties ?
 

 Erom an examination of the pleadings and proofs, we are satisfied that it did not. The bill alleges that the relation commenced in the early part of the year 1857, without specifying the precise time, and the answer admits the allegation in the same terms. The proofs are equally indefinite as to the time, and from the whole, we conclude that the defendant became the general manager and agent of the plaintiff immediately after the execution of the deed, and no doubt in consequence of it. It follows that the force and effect, which this Court may give to the deed, cannot be governed by the principle which we hold to be applicable to the judgment on the bond; and that if the deed can be impeached, it must be on the ground of fraud, circumvention or undue influence;
 
 Deaton
 
 v. Monroe, 4 Jones’ Eq. 39. The allegations of the plaintiff, with respect to the execution of the deed, are, in substance, that the defendant being his kinsman and neighbor, and professing to be his-friend, had acquired great influence over him; that he, the plaintiff, by a long' and habitual course of intemperance, had become very much enfeebled, both in body and' in mind, and that the defendant availing himself of his
 
 *339
 
 influence, procured from him the execution of the deed when he was in no condition to understand, and did not understand its contents, and under circumstances which precluded him from seeking and obtaining the counsel and advice of a disinterested friend. The plaintiff, then, avers, expressly, that the consideration expressed of a debt of $2500,- due from him to the defendant was false; for that he was then not indebted to him at all, or at most, was indebted only for a very small store account. He also avers that the other part of the consideration, to wit, the maintainance of his wife, should she become his widow, was scarcely appreciable, for that she was in very low health and was not expected to live, and, in fact, did not live but a few months. The property, conveyed, is alleged to have been of much greater value than the amount of the consideration set forth in the deed, supposing it to have been truly recited.
 

 These allegations are expressly denied by the defendant, who avers that the deed was drawn according to the wishes of the plaintiff, who executed it willingly, and with a full knowledge of its contents, and who, though old and intemperate, had sufficient capacity to understand and transact the busi^ness. , As 'to the money part of the consideration, the defendant states that the plaintiff was “justly indebted to him in a large amount.”
 

 The parties being thus at issue, with respect to the mental imbecility of the plaintiff, and the exercise of undue influence oyer him by the defendant, as well as to the consideration, mentioned in the deed, we have examined the proofs on file, which relate to those subjects. We shall not attempt to state, in detail, the result of our examination, but shall merely say that we are satisfied, that at the time when the deed bears date, and for some months before, the plaintiff had capacity sufficient to enable him to understand and to transact ordinary business, but he was old and in feeble health., and his mind had been so much weakened by long continued and habitual intemperance, that he could be easily influenced to do any thing which a person, in whom he had confidence, desired;
 
 *340
 
 that the defendant was his kinsman and neighbor, had been kind to him, and had acquired great influence over him, and that he, through the means of that influence, unduly exercised, procured the execution of the deed in question. Among the circumstances of suspicion against the defendant is, that of the recital of the pecuniary consideration of $2500, in a debt due from the plaintiff to him, which he does not attempt to explain in his answer, and of the existence of which, he furnishes us no evidence. To the positive allegation of the plaintiff, that he at that time owed him nothing .at all, or if any thing, only a very small store account, the defendant merely answers that the plaintiff was “ justly indebted to him in a lai’ge amount,” without explaining how the indebtedness arose, or how it was.evidenced, whether by bond, note or open account; and among all his proofs, we do not find any evidence of it. The vagueness of the answer as to the amount, and the absence of any explanation as to how it arose, prevent us from coming to any other conclusion than that there was either no indebtedness at all, or a debt of a very trifling sum. We are not to be understood as holding that a consideration was necessary to sustain the deed, as between the parties, had ■the conveyance been fairly obtained. The plaintiff was, we think, capable of executing a conveyance of his property, and if, without any fraud, circumvention or undue influence, practiced upon, or exercised over him, he had made a voluntary deed in favor of the defendant, we should have upheld it, and in doing so, we should have been sustained by the authority of adjudications, both in 'England and in this State;
 
 Hunter
 
 v. Atkens, 3 Myl. and Keen 113 ;
 
 Taylor
 
 v. Taylor, 6 Ire. Eq. 26. But when we find that the defendant resorted to the expedient of pretending a debt, which had no existence, for the purpose of obtaining a conveyance of all the plaintiff’s property, subject to his life-estate therein, we are not at liberty to give it any greater effect than to permit it to stand as a security for any sum which may have been really due to him from the plaintiff. There must be a decree for an account between the parties upon the principles herein expressed.
 

 Pep CURIAM, Account ordered.