EVELYN BARTON BECK, Individually, and as Executor of the Estate of AVERY
EDWARD BECK, Plaintiff v. LARRY EUGENE BECK, Defendant

No. COA04-1674

(Filed 17 January 2006)

## 1. Estoppel— quasi-estoppel—failure to show benefit

Plaintiff grantor was not estopped under the theory of quasi-estoppel from challenging the mental capacity of her deceased co-grantor husband to execute a deed to their son, and the case is reversed and remanded for further proceedings including the presentation of defendant son's evidence, because: (1) there was no evidence that plaintiff received any actual benefit even though the trial court found that she avoided the possibility of her and her husband being ineligible for Medicaid based on owning their marital residence and other real property when the record contains no evidence that she or her husband ever applied for or actually received Medicaid or that without deeding the property to defendant son they would in fact have been ineligible for Medicaid; (2) although the trial court found that plaintiff received the ability and benefit of filing this very lawsuit as the attorney-in-fact for her husband prior to his death by relying upon the power of attorney signed by her husband on the very date she claims her husband was incapable of deeding the property, a power of attorney is for the benefit of the principal and not the agent; (3) although the trial court found that plaintiff received the benefit of being able to file a wrongful death complaint as personal representative of her husband's estate, the real party in interest is not the estate but the beneficiary of the recovery, and thus, any benefit plaintiff would receive from the wrongful death action would be by virtue of her status as her husband's lawful wife instead of the fact that she was his personal representative; and (4) although the trial court found that plaintiff received the benefit of being appointed the personal representative of her husband's estate by relying upon the new will signed by her husband, the record contains no evidence that she would not have been the

**BECK v. BECK**

[175 N.C. App. 519 (2006)]

personal representative in the absence of the new will, that she received any benefits by virtue of her being named the executrix, or that there was anything other than a theoretical possibility of a dispute over the identity of the personal representative.

## 2. Estoppel— estoppel by deed—no evidence of consideration

Plaintiff grantor was not estopped under the theory of estoppel by deed from challenging the mental capacity of her deceased co-grantor husband to execute a deed to their son, and the case is reversed and remanded for further proceedings including the presentation of defendant son's evidence, because: (1) the record contains no evidence of any consideration being conveyed by defendant in exchange for the deed; (2) on 19 January 1998 plaintiff purported to grant precisely what she in fact owned which was her share of the property she owned with her husband in a tenancy by the entirety whereas the dispute in this case concerns the property interest her husband granted or failed to grant to their son; and (3) based on plaintiff's evidence, there was no indication that when plaintiff joined with her husband in signing the deed to defendant that she had no title, a defective title, or an estate less than that which she assumed to grant.

## 3. Estoppel— equitable estoppel—no showing changed position prejudicially based on representation

Plaintiff grantor was not equitably estopped from challenging the mental capacity of her deceased co-grantor husband to execute a deed to their son, and the case is reversed and remanded for further proceedings including the presentation of defendant son's evidence, because the record does not indicate that defendant in any way changed his position prejudicially as a result of any representation by plaintiff regarding her husband's competence to sign the deed.

Appeal by plaintiff from order entered 17 September 2004 by Judge Christopher M. Collier in Davidson County Superior Court. Heard in the Court of Appeals 15 June 2005.

*Brinkley Walser, P.L.L.C., by Walter F. Brinkley and April D. Craft, for plaintiff-appellant.*

*Law Offices of J. Calvin Cunningham, by J. Calvin Cunningham and R. Flint Crump, for defendant-appellee.*

GEER, Judge.

This litigation arises out of a family dispute over the ownership of land in Davidson County. Plaintiff Evelyn Barton Beck ("Mrs. Beck") and her husband, Avery Edward Beck ("Mr. Beck"), deeded land to their son, defendant Larry Eugene Beck, in January 1998. Mrs. Beck subsequently sued to invalidate the deed, claiming that Mr. Beck— now deceased—was incompetent at the time he signed the deed. At the conclusion of plaintiff's evidence, the trial court entered an order granting the son's motion to dismiss under N.C.R. Civ. P. 41(b), which this Court subsequently vacated and remanded for further findings of fact. On remand, the trial court, after making additional findings of fact, again granted the son's motion to dismiss on the grounds that plaintiff's evidence established that her claims were precluded under the theories of quasi-estoppel, estoppel by deed, and equitable estoppel. Based upon our review of the record, we have concluded that certain findings of fact are not supported by competent evidence and that the remaining findings do not support the conclusions of law and the trial court's granting of the motion to dismiss. We, therefore, reverse and remand for further proceedings, including the presentation of defendant's evidence.

## Facts

A full statement of the facts in this case is set forth in this Court's earlier opinion, *Beck v. Beck*, 163 N.C. App. 311, 593 S.E.2d 445 (2004) ("*Beck I*"). We summarize here only the facts needed for an understanding of this opinion. On 19 January 1998, Mr. and Mrs. Beck executed a number of documents, including (1) a power of attorney and health care power of attorney by which Mr. Beck appointed Mrs. Beck as his attorney in fact and (2) a deed conveying two tracts of land owned by Mr. and Mrs. Beck to their son, Larry Beck. On the same date, Mr. Beck also executed a will naming Mrs. Beck as his executor and sole devisee.

On 19 February 2000, Mrs. Beck, using her power of attorney, filed this lawsuit against Larry Beck on her own behalf and Mr. Beck's behalf. Mrs. Beck claimed that the deed to Larry Beck was invalid because Mr. Beck lacked the capacity to execute a deed on the date it was signed, 19 January 1998. Defendant answered the complaint on 8 May 2000.

On 22 September 2000, Mr. Beck died. Soon thereafter, the parties entered into a stipulation that "[r]ather than subject the estate to the expense which would be involved in determining the validity of

[Mr. Beck's] 1998 will, the parties have agreed to stipulate that, if Evelyn Barton Beck qualifies as the executor of Avery Edward Beck under the 1998 will, evidence of this fact will not be admissible in the present action for the purpose of proving that Avery Edward Beck was competent on January 19, 1998." In this action, Mrs. Beck, in her capacity as executrix for the estate, was then substituted to represent her husband's estate as a party plaintiff.

The case was heard by Judge Christopher M. Collier in a bench trial beginning on 3 September 2003. At the conclusion of Mrs. Beck's evidence, defendant moved to dismiss pursuant to N.C.R. Civ. P. 41(b). Judge Collier granted the motion, concluding that Mrs. Beck was "estopped" from challenging the mental capacity of Mr. Beck as of 19 January 1998.

Upon plaintiff's appeal, this Court in *Beck I* first noted that the trial court had not specified what theory of estoppel it was relying upon in dismissing plaintiff's claim. 163 N.C. App. at 315, 593 S.E.2d at 448. The Court then identified three potential estoppel theories by which defendant might prevail: (1) quasi-estoppel, (2) estoppel by deed, and (3) equitable estoppel. *Id.* at 315-17, 593 S.E.2d at 448-49. After concluding that the trial court's findings of fact were insufficient to support a conclusion that plaintiff was estopped from contesting her husband's competence under any of the three theories, the Court vacated the trial court's order and remanded for additional findings of fact. *Id.* at 317, 593 S.E.2d at 449.

On remand, the trial court entered an "Order Supplementing Court's Order Granting Defendant's Motion to Dismiss." This order contained additional findings of fact and concluded that plaintiff was estopped from challenging the mental capacity of Mr. Beck to execute the deed under all three theories: quasi-estoppel, equitable estoppel, and estoppel by deed. Plaintiff again timely appealed to this Court.

We observe initially that this case comes to us upon the relatively unusual procedural posture of a dismissal under N.C.R. Civ. P. 41(b). That rule provides in pertinent part:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to

## BECK v. BECK

[175 N.C. App. 519 (2006)]

relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this section . . . operates as an adjudication upon the merits.

"Dismissal under [Rule 41(b)] is left to the sound discretion of the trial court." *In re Oghenekevebe*, 123 N.C. App. 434, 437, 473 S.E.2d 393, 396 (1996). In a Rule 41(b) context, "the trial judge may 'decline to render any judgment until the close of all the evidence, and except in the clearest cases, he should defer judgment until the close of all the evidence.' " *Id.* (quoting *In re Becker*, 111 N.C. App. 85, 92, 431 S.E.2d 820, 825 (1993)).

On appeal of a Rule 41(b) dismissal, this Court determines whether any evidence supports the findings of the trial judge, notwithstanding the existence of evidence to the contrary. *Lumbee River Elec. Membership Corp. v. City of Fayetteville*, 309 N.C. 726, 741, 309 S.E.2d 209, 218 (1983) ("[T]he judge can give judgment against plaintiff not only because his proof has failed in some essential aspect to make out a case but also on the basis of facts as he may then determine them to be from the evidence then before him."). If the findings of fact are supported by the evidence and those findings support the conclusions of law, they are binding on appeal. *Id.* at 741-42, 309 S.E.2d at 219. "The trial court's conclusions [of law], however, are completely reviewable." *Baker v. Showalter*, 151 N.C. App. 546, 549, 566 S.E.2d 172, 174 (2002). We address each of the estoppel theories relied upon by the trial court in turn.

### Quasi-Estoppel

[1] "Quasi-estoppel is based on a party's acceptance of the benefits of a transaction, and provides where one having the right to accept or reject a transaction or instrument takes and retains benefits thereunder, he ratifies it, and cannot avoid its obligation or effect by taking a position inconsistent with it." *Parkersmith Props. v. Johnson*, 136 N.C. App. 626, 632, 525 S.E.2d 491, 495 (2000) (internal quotation marks omitted). The "essential purpose" of the quasi-estoppel theory is to prevent a party from benefitting by taking two clearly inconsistent positions. *B & F Slosman v. Sonopress, Inc.*, 148 N.C. App. 81, 88, 557 S.E.2d 176, 181 (2001), *disc. review denied*, 355 N.C. 283, 560 S.E.2d 795 (2002).

**BECK v. BECK**

[175 N.C. App. 519 (2006)]

In *Beck I*, this Court instructed the trial court that, in conducting its quasi-estoppel analysis, it should "determine whether plaintiff ratified the deed and other instruments executed 19 January 1998 by accepting benefit [sic] under them, such that she may not now take an inconsistent position." 163 N.C. App. at 315, 593 S.E.2d at 448. On remand, the trial court found that Mrs. Beck received five benefits under the documents executed on 19 January 1998.

The first "benefit" found by the trial court was: "She avoided the possibility of her and her husband, Avery Edward Beck, being ineligible for Medicaid because of owning their marital residence and other real property." The record, however, contains no evidence that Mrs. Beck and/or Mr. Beck ever applied for or actually received Medicaid or that, without deeding the property to Larry Beck, Mr. and Mrs. Beck would in fact have been ineligible for Medicaid. Indeed, most of the testimony referencing Medicaid was struck on defendant's motion. Without such evidence, there can be no finding that Mrs. Beck received any actual benefit. There is only the hypothetical possibility of a benefit. This Court has previously held that an analogous absence of evidence precluded application of the theory of quasi-estoppel:

> Plaintiff claims in its brief to this Court Defendant received a "monetary and psychological benefit" from [one of the Defendants'] assignment to Plaintiff because the assignment "relieved [Defendants] of their need to find another buyer." The record, however, does not contain any evidence Defendants actually received any benefits as a result of the assignment. There is no evidence Defendants were in need of finding a buyer at the time [of] the assignment, and Defendants never accepted any funds from Plaintiff under the assignment.

*Parkersmith*, 136 N.C. App. at 632-33, 525 S.E.2d at 495. The evidence in this record thus does not support a finding that Mrs. Beck's challenge to the validity of the deed is "clearly inconsistent" with anything she may or may not have received with respect to Medicaid. *B & F Slosman*, 148 N.C. App. at 88, 557 S.E.2d at 181.

The trial court next found: (1) "[Mrs. Beck] received the ability and benefit of filing this very lawsuit as the Attorney-in-Fact for her husband, Avery Edward Beck, prior to his death, by relying upon the Power of Attorney signed by Avery Edward Beck on January 19, 1998"; and (2) "[Mrs. Beck] received the benefit of making health care decisions for her husband, Avery Edward Beck." It is, however, well-

BECK v. BECK

[175 N.C. App. 519 (2006)]

settled in this State that a power of attorney is for the benefit of the principal and not the agent. *Whitford v. Gaskill*, 345 N.C. 475, 478, 480 S.E.2d 690, 692 ("[A]n attorney-in-fact is presumed to act in the best interests of the principal."), *modified on other grounds*, 345 N.C. 762, 489 S.E.2d 177 (1997); *Estate of Graham v. Morrison*, 168 N.C. App. 63, 68, 607 S.E.2d 295, 299 (2005) ("[O]ur Supreme Court has indicated that an attorney-in-fact has an obligation to act in the best interests of the principal."). The powers of attorney that Mr. Beck signed in favor of Mrs. Beck, therefore, cannot be considered a "benefit" to her for purposes of quasi-estoppel.

We next turn to the fourth "benefit" listed by the trial court: "She received the benefit of being able to file a Complaint . . . for wrongful death against Southern Assisted Living as Personal Representative of the Estate of Avery Edward Beck." While it is true that North Carolina's wrongful death statute provides that the decedent's personal representative or collector is the proper person to bring a wrongful death action, N.C. Gen. Stat. § 28A-18-2(a) (2003), it is also well-settled that, in a wrongful death action, "the real party in interest is not the estate but the beneficiary of the recovery." *Evans v. Diaz*, 333 N.C. 774, 776, 430 S.E.2d 244, 245 (1993). The beneficiaries as defined by the Wrongful Death Act are the persons who would take from decedent under the Intestate Succession Act. *Locust v. Pitt County Mem'l Hosp., Inc.*, 358 N.C. 113, 117, 591 S.E.2d 543, 545 (2004). *See also* N.C. Gen. Stat. § 28A-18-2(a) (providing that any wrongful death recovery "shall be disposed of as provided in the Intestate Succession Act"). Any benefit that Mrs. Beck would receive from the wrongful death action would, therefore, be by virtue of her status as Mr. Beck's lawful wife and not because she was his personal representative. "One cannot be estopped by accepting that which he would be legally entitled to receive in any event." *In re Will of Peacock*, 18 N.C. App. 554, 556, 197 S.E.2d 254, 255 (1973).

Fifth, the trial court found: "[Mrs. Beck] received the benefit of being appointed the Personal Representative of her husband, Avery Edward Beck's Estate by relying upon the Will signed by her husband, Mr. Beck . . . . If she were unable to rely upon this Will to be appointed Personal Representative, she could possibly have been subject to a prolonged dispute in an action before the Davidson County Clerk of Court regarding who would be appointed Personal Representative of the Estate." The record, however, contains no evidence that she would not have been the personal representative in the absence of the new will, of any benefits—as opposed to responsibilities—that

she received by virtue of being named the executrix, or that there was anything other than a theoretical possibility of a dispute over the identity of the personal representative. Like the first "benefit," avoiding the possibility of Medicaid ineligibility, we cannot conclude that a mere theoretical possibility of avoiding litigation—which might or might not be costly and time-consuming—is a benefit such that Mrs. Beck "may not now take an inconsistent position." *Beck I*, 163 N.C. App. at 315, 593 S.E.2d at 448.

In sum, the trial court's first and fifth "benefits" are not supported by competent evidence, while the second, third, and fourth "benefits" do not constitute sufficient benefits to support a conclusion that Mrs. Beck is estopped from challenging the deed to Larry Beck under a quasi-estoppel theory.

### Estoppel by Deed

**[2]** The seminal estoppel by deed case in North Carolina is *Baker v. Austin*, 174 N.C. 433, 93 S.E. 949 (1917). That opinion states:

> Where a deed is sufficient in form to convey the grantor's whole interest, an interest afterwards acquired passes by way of estoppel to the grantee. . . . If a grantor having no title, a defective title, or an estate less than that which he assumed to grant, conveys with warranty or covenants of like import, and subsequently acquires the title or estate which he purported to convey, or perfects his title, such after-acquired or perfected title will inure to the grantee or to his benefit by way of estoppel.

*Id.* at 434-35, 93 S.E. at 950 (internal quotation marks omitted). In 1963, the Supreme Court also held, at least with respect to a deed from a mother to a child, that estoppel by deed is inapplicable when the underlying deed was not conveyed in exchange for valuable consideration. *Cruthis v. Steele*, 259 N.C. 701, 704, 131 S.E.2d 344, 347 (1963).

In this case, the record contains no evidence of any consideration being conveyed by defendant in exchange for the deed. Further, on 19 January 1998, Mrs. Beck purported to grant precisely what she in fact owned: her share of the property she owned with her husband in a tenancy by the entirety. That estate is precisely what she did convey. The dispute in this case concerns the property interest Mr. Beck granted (or failed to grant) to Larry Beck and not the property interest that Mrs. Beck granted. At least from plaintiff's evidence, which is

**BECK v. BECK**

[175 N.C. App. 519 (2006)]

the only evidence before us, there is no indication that when Mrs. Beck joined with her husband in signing the deed to Larry Beck that she had (1) no title, (2) a defective title, or (3) an estate less than that which she assumed to grant. Therefore, estoppel by deed is inapplicable, at least on the current record.

## Equitable Estoppel

[3] Although this Court in *Beck I* did not analyze the theory of equitable estoppel as it related to the facts of this case, the trial court concluded as an alternative basis for its ruling that equitable estoppel barred Mrs. Beck from contesting the issue of Mr. Beck's competence. *Parkersmith* describes the elements of equitable estoppel as follows:

A party invoking the doctrine of equitable estoppel has the burden of proving the following elements:

(1) The conduct to be estopped must amount to false representation or concealment of material fact or at least which is reasonably calculated to convey the impression that the facts are other than and inconsistent with those which the party afterwards attempted to assert;

(2) Intention or expectation on the party being estopped that such conduct shall be acted upon by the other party or conduct which at least is calculated to induce a reasonably prudent person to believe such conduct was intended or expected to be relied and acted upon[;]

(3) Knowledge, actual or constructive, of the real facts by the party being estopped;

(4) Lack of knowledge of the truth as to the facts in question by the party claiming estoppel;

(5) *Reliance on the part of the party claiming estoppel upon the conduct of the party being sought to be estopped;*

(6) *Action based thereon of such a character as to change his position prejudicially.*

*Parkersmith*, 136 N.C. App. at 633, 525 S.E.2d at 495-96 (emphasis added) (internal quotation marks omitted).

The trial court found that defendant relied upon the representation that Mr. Beck was competent and that the deed was valid by

occupying, maintaining, and improving the property and by making property tax and insurance payments on that property. The evidence to date, however, indicates that defendant has occupied the property since 1985 rent-free under an agreement with Mr. Beck that defendant would pay the insurance and property taxes and maintain and restore the house. The record does not yet indicate that defendant in any way changed his position prejudicially as a result of any representation by Mrs. Beck regarding Mr. Beck's competence to sign the deed.

There being inadequate support in the record as it stands for the trial court's conclusion that the doctrines of quasi-estoppel, estoppel by deed, or equitable estoppel operate to bar Mrs. Beck's challenge to the deed to Larry Beck, we reverse the trial court's order dismissing this action under Rule 41 and remand for further proceedings.

Reversed and remanded.

Judges CALABRIA and ELMORE concur.