CALABRIA, Judge.
Plaintiff appeals from the trial court's orders and judgment. We affirm.
I. Background
Regina Johnson ("Regina") was born in Poland on 22 November 1918. Around 1962, Regina and her husband, Norman, moved to the United States and settled in Chapel Hill, North Carolina. In 1976, Regina's nephew, Marek Maciolowski ("Marek"), moved to the United States to pursue a master's degree. He lived with Regina and Norman for two years, then moved into his own residence in Chapel Hill. Marek was the only member of Regina's family who lived in the United States, and he and his family remained close with Regina following Norman's death in November 2004. Around 2006, Regina granted Marek power of attorney over her affairs.
Regina was a very charitable woman; she contributed generously to various individuals, churches, and organizations worldwide. She particularly supported causes in Poland, and she remained in contact with several relatives there. In 2004, Regina encouraged her niece, Ewa Violetta Elandt-Jankowska ("Ewa"), to establish a private foundation in Poland "aimed at supporting education and the health of children from low income families, protecting the lives of such children, and supporting single mothers." In 2009, the foundation was renamed Fundacja Jasmin Reginy Elandt i Normana Lloyda Johnsonów ("the Foundation") in honor of Regina and Norman, who had always supported its charitable goals and objectives. Since its inception, the Foundation has provided various charitable functions, including assisting individuals with medical and education expenses; providing assistance after a local flood; and supporting other organizations' charitable work. Regina named the Foundation as a beneficiary of her estate.
In August 2010, Ewa and her sister, Hanna Elandt-Pogodzinska ("Hanna"), traveled from Poland to visit their 91-year-old aunt in Chapel Hill. Ewa and Hanna told Regina about the Foundation's work in Poland, and the parties brainstormed additional charitable services that the Foundation might provide. Regina told Ewa and Hanna that the Foundation "was doing what she had always hoped that it would be doing" and decided to make a sizeable contribution. On 23 August 2010, Regina made a $350,000 donation, which the Foundation was to use for "charitable purposes." Marek was recovering from surgery at that time and was not informed about the transaction until after Ewa and Hanna returned to Poland.
After he learned about the donation, Marek pressured Regina to request that the money be returned. However, in September 2010, Regina asked her attorney, Marcus Hudson ("Mr. Hudson"), to witness her draft a letter certifying that her donation was "made under [her] aware and sound mind, and not under pressure" of Ewa and Hanna. Regina also consulted Mr. Hudson on the gift's potential tax implications. He advised that although gifts to foreign charities are generally not income-tax deductible, Regina's donation could constitute a charitable gift if the Foundation qualified as a charity in Poland, its country of origin. Regina believed that the Foundation so qualified, but she expressed that she wanted to make the gift regardless of its tax consequences. Based on their discussions, Mr. Hudson prepared, and Regina signed, a gift tax return designating the donation as a charitable gift.
Regina died on 31 May 2011. On 15 July 2013, Marek, as executor of her estate, filed a complaint against defendants alleging fraud, constructive fraud, and unjust enrichment. After defendants failed to adequately respond to discovery requests, the Estate ("plaintiff") filed a motion to compel seeking, inter alia , the Foundation's bank statements and records. On 27 June 2014, the trial court entered an order compelling discovery, but limiting the scope of plaintiff's request for financial records to those "from 2010 to the present."
Trial commenced on 15 June 2015. Defendants moved for dismissal of all claims at the close of plaintiff's evidence; the court denied the motion at that time, but defendants renewed their motion at the close of all evidence. On 18 June 2015, the trial court entered an order granting defendants' motion as to the fraud claim, but denying it as to plaintiff's claims for constructive fraud and unjust enrichment. On 6 November 2015, the court entered judgment dismissing, with prejudice, plaintiff's remaining claims. Plaintiff appeals.
II. Discovery Order
Plaintiff first asserts that the trial court erred by denying plaintiff access to the Foundation's bank records prior to 2010. We disagree.
Pursuant to N.C. Gen. Stat. § 1A-1, Rule 26(b)(1) (2015), "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action[.]" When an opposing party fails to respond to discovery requests, the discovering party may apply for an order compelling discovery, pursuant to the guidelines and procedures outlined in Rule 37. See N.C. Gen. Stat. § 1A-1, Rule 37(a). "A motion to compel production of documents is committed to the trial court's sound discretion and the trial court's ruling will not be reversed absent an abuse of that discretion." Howlett v. CSB, LLC , 164 N.C. App. 715, 722, 596 S.E.2d 899, 904 (citation omitted), disc. review denied , 359 N.C. 68, 604 S.E.2d 313 (2004). "An abuse of discretion occurs only when a court makes a patently arbitrary decision, manifestly unsupported by reason." Id. (citation omitted).
In the instant case, plaintiff sought to discover all of the Foundation's bank records and statements dating back to its inception in 2004. The trial court, in its discretion, ordered defendants to produce those documents "from 2010 to the present." On appeal, plaintiff contends that the trial court erred in so ruling because "the extent to which [the Foundation] had been making truly charitable disbursements prior to August 2010, and whether [it] had been in fact using funds for personal purposes," were relevant to plaintiff's claims. While this may be true, plaintiff fails to establish that the trial court's ruling on this one request constitutes an abuse of discretion, in light of the court's other discovery rulings. For example, the court ordered defendants to fully comply with plaintiff's requests for, inter alia : reports that the Foundation submitted to the General Inspector of Financial Information from 2008-2013; the Foundation's application for tax exempt status and the Tax Office's response; and copies of the Foundation's 2004-2014 tax returns, signed and confirmed by the Tax Office. The trial court also ordered defendants to produce all of the Foundation's bank statements and records for 2010 onward. Thus, plaintiff had access to the Foundation's bank records for the eight months prior to Ewa and Hanna's August 2010 visit, which was initiated by Regina. If these records were insufficient for plaintiff to present its theory of the case, plaintiff could have requested that the trial court reconsider or amend its discovery order, but no such motion was made.
In light of all of the evidence sought and actually produced, we are unconvinced that the trial court's limitation on plaintiff's request for the Foundation's bank records rises to the level of abuse of discretion.
III. Involuntary Dismissal Order
A. Rule 41(b)
Plaintiff next argues that the trial court erred by dismissing its claim for fraud because Rule 41(b) of the North Carolina Rules of Civil Procedure does not allow for such a dismissal at the close of all of the evidence. We disagree.
"On appeal of a Rule 41(b) dismissal, this Court determines whether any evidence supports the findings of the trial judge, notwithstanding the existence of evidence to the contrary." Beck v. Beck , 175 N.C. App. 519, 523, 624 S.E.2d 411, 414 (2006) (citation omitted). If the trial court's findings of fact are supported by the evidence and those findings support the court's conclusions of law, they are binding on appeal. Id. "The trial court's conclusions of law, however, are completely reviewable." Id. (citation and brackets omitted).
"Dismissal under Rule 41(b) is left to the sound discretion of the trial court." Id. (citation and brackets omitted). The rule provides, in pertinent part:
After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this section ... operates as an adjudication upon the merits.
N.C. Gen. Stat. § 1A-1, Rule 41(b). Although Rule 41(b) does not specifically provide for involuntary dismissal at the close of all of the evidence, "where such a motion is made and ruled upon and the court has made findings as required by [N.C. Gen. Stat. §] 1A-1, Rule 52, the judgment entered will be treated as a judgment on the merits." A.M.E. Zion Church v. Union Chapel A.M.E. Zion Church , 64 N.C. App. 391, 409, 308 S.E.2d 73, 83 (1983) (citations omitted), disc. review denied , 310 N.C. 308, 312 S.E.2d 649 (1984).
In the instant case, defendants moved for dismissal of all claims at the close of plaintiff's evidence. The trial court denied the motion at that time, but defendants renewed their motion at the close of all of the evidence. The court made findings of fact, pursuant to N.C. Gen. Stat. § 1A-1, Rule 52(a), and concluded that, as a matter of law, plaintiff had failed to prove the elements of fraud. On appeal, plaintiff contends that the procedure utilized by the trial court was "especially prejudicial" because certain findings from the dismissal order also appear in the court's ultimate judgment, and because the order was entered "without a true closing argument, to bring together the complex factual issues presented at trial." However, plaintiff cites no authority, and our research discloses none, that supports these assertions. This argument is, therefore, overruled.
We turn next to the merits of plaintiff's fraud claim.
B. Fraud
The elements of fraud are: "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." Forbis v. Neal , 361 N.C. 519, 526-27, 649 S.E.2d 382, 387 (2007). Here, the trial court found no false representation or concealment of a material fact by defendants because
the evidence shows, without any to the contrary, that [defendants], in the person of Ewa Elandt-Jankowska, did discuss with the decedent, Regina Cecylia Johnson, the decedent's desire, as stated, to have the decedent's brainchild, a foundation, to be established, and that that foundation was established by way of funds that were provided by the decedent to the defendant Ewa Elandt-Jankowska as well to as [sic] her sister, the defendant Hanna Elandt-Podogzinska [sic]; that pursuant to that, as well, it was represented that the decedent wanted to have the house at issue to remain in the family; that once it was determined that none of the children in the generation after the decedent would live in the home, that it was discussed that the house would be retained in the family by way of being the headquarters of the foundation at issue, namely, [the Foundation]. This was known and approved by the decedent, Regina Cecylia Johnson, and as a result, there was no false representation or concealment of a material fact.
Based on this finding, the court determined that plaintiff had failed to prove the elements of fraud and dismissed the claim.
Plaintiff contends that the trial court's order "failed to address numerous critical issues raised by the evidence," namely: defendants' use of the funds on items other than the family house in Poland, which was purchased by the Foundation in July 2013; "numerous instances of self-dealing" by defendants; defendants' failure to turn the family house into a daycare or other charitable entity; and questions surrounding defendants' credibility as witnesses. However, plaintiff fails to establish how these issues affect the merits of plaintiff's fraud claim. Regina's $350,000 donation was intended to be used for "charitable purposes," including the Foundation's purchase of the family house; however, there is no document defining that term as between the parties. The trial court, as fact finder, was tasked with weighing all of the evidence presented and determining whether the Foundation was using Regina's donation according to her wishes. The court's findings are supported by the evidence at trial, and those findings support its conclusion that plaintiff failed to meet its burden of proving fraud. See Beck , 175 N.C. App. at 523, 624 S.E.2d at 414. Accordingly, plaintiff's challenge is overruled.
IV. Judgment
"The standard of review on appeal from a judgment entered after a non-jury trial is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment." Cartin v. Harrison , 151 N.C. App. 697, 699, 567 S.E.2d 174, 176 (citation and internal quotation marks omitted), disc. review denied , 356 N.C. 434, 572 S.E.2d 428 (2002). The trial court, as fact finder, determines the weight and credibility to accord each witness's testimony. Id. at 703, 567 S.E.2d at 178 (citation omitted).
A. Constructive Fraud
Plaintiff next contends that the trial court erred by entering judgment for defendants on the issue of constructive fraud. We disagree.
Constructive fraud "arises where a confidential or fiduciary relationship exists, which has led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff." Forbis , 361 N.C. at 528, 649 S.E.2d at 388 (internal citations and quotation marks omitted). Unlike actual fraud, constructive fraud "is based on a confidential relationship rather than a specific misrepresentation. Another difference is that intent to deceive is not an element of constructive fraud." Id. at 528-29, 649 S.E.2d at 388 (internal citations and quotation marks omitted). Where the defendant "obtains a possible benefit through the alleged abuse of the confidential or fiduciary relationship, the aggrieved party is entitled to a presumption that constructive fraud occurred." Id. at 529, 649 S.E.2d at 388 (citation omitted). "Once the presumption arises, the alleged fiduciary may rebut the presumption by showing, for example, that the confidence reposed in him was not abused." Id. (citation and internal quotation marks omitted); see also In re Will of Sechrest , 140 N.C. App. 464, 471, 537 S.E.2d 511, 516-17 (2000) (stating that the presumption of fraud may "be rebutted by proof that no fraud was committed, and no undue influence or moral duress exerted" (citation omitted)), disc. review denied , 353 N.C. 375, 547 S.E.2d 16-17 (2001).
In the instant case, the parties stipulated, pre-trial, that Regina "reposed trust and confidence" in Ewa and Hanna. Regarding plaintiff's claim for constructive fraud, the court concluded that:
9. The evidence shows conclusively that Regina Elandt Johnson was competent and exercised independent judgment regarding her donation of funds to the Foundation, that Regina Elandt Johnson had included the Foundation in her estate plan and evidenced a longstanding intent to benefit the Foundation, and such evidence refutes any assertion that [d]efendants attempted to take advantage of Regina Elandt Johnson.
10. The [c]ourt finds that the donation by Regina Elandt Johnson to the Foundation represented the voluntary decision of Regina Elandt Johnson consistent with her long-standing intentions, and that an action for constructive fraud cannot be sustained as a matter of law.
On appeal, plaintiff acknowledges that Regina intended to transfer funds to the Foundation in August 2010, and that the Foundation was named as a beneficiary of her will prior to that date. Nevertheless, plaintiff contends that these acts were the result of "the fraud that [defendants] had been perpetrating for years." Specifically, plaintiff challenges Findings of Fact 16 and 18 of the trial court's judgment, which state:
16. The contributions by Regina Elandt Johnson to the Foundation all qualify favorably for estate and gift tax purposes with the Internal Revenue Code of the United States, as the Foundation had the same qualities under Polish law as required by United States law.
...
18. Following the gift to the Foundation, Regina Elandt Johnson was being extremely pressured by people in the United States to have the gifts to the Foundation to [sic] be brought back to the United States. Regina Elandt Johnson told Marcus Hudson that her nephew Marek was pressuring her, but she took no action to have the funds transferred back to her.
Plaintiff asserts that Finding of Fact 16 is erroneous because "the transfer did not qualify with US laws to exempt the transfer from the gift tax," and because the evidence "conclusively shows that [the Foundation] does engage in self-dealing...." These assertions relate to whether Regina's August 2010 donation qualified for a charitable gift tax exemption. However, her donation was never conditioned on such qualification; that issue arose post-gift, when Regina consulted Mr. Hudson about the tax implications of her contribution. Indeed, the trial court found that "[i]t was the independent determination of Regina Elandt Johnson to make the USD $350,000 contribution to the Foundation, even if the contribution did not qualify as a charitable deduction for gift tax purposes."
Regarding Finding of Fact 18, plaintiff contends that "this finding is significant because it bears on Regina's intent," and the court erred because both Marek and Ewa testified that Regina requested that the funds be returned. However, plaintiff fails to explain how this alleged error might have affected the court's ultimate conclusions, in light of the abundance of evidence indicating that Regina wished to make the gift.
Plaintiff also contends that the trial court erred by failing to resolve the validity of defendants' claims under Polish privacy laws; however, plaintiff fails to explain the necessity of such a determination, and in any event, this argument is unavailing for similar reasons as those regarding defendants' alleged self-dealing.
The trial court's unchallenged findings are supported by the evidence, and those findings support its conclusions on constructive fraud. Consequently, plaintiff's challenge is overruled.
B. Unjust Enrichment
Plaintiff next contends that the trial court erred by entering judgment for defendants on the issue of unjust enrichment. We disagree.
In order to establish a claim for unjust enrichment, a party must have conferred a benefit on the other party. The benefit must not have been conferred officiously, that is it must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances. The benefit must not be gratuitous and it must be measurable.
Booe v. Shadrick , 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988). Furthermore, "the defendant must have consciously accepted the benefit." Id. "[A]n unjust payment loses its voluntary character if it is brought about by fraud, duress, or undue influence." Bradsher v. Morton , 249 N.C. 236, 243, 106 S.E.2d 217, 222 (1958).
Here, the trial court determined that "the benefit of the donation to the Foundation was voluntarily and gratuitously bestowed by Regina Elandt Johnson such that an action for unjust enrichment cannot be sustained as a matter of law." On appeal, plaintiff contends that Regina's donation was not truly voluntary because defendants "misled Regina as to whether [the Foundation] was charitable, including whether [it] would engage in self-dealing." However, as previously stated, Regina's donation was not conditioned on the Foundation's charitable status under U.S. tax laws, and Mr. Hudson testified that Regina wished to make the gift regardless of its tax implications. With no document to define "charitable purposes" or otherwise govern the Foundation's use of the funds, plaintiff's arguments are ineffective to prove that defendants failed to use Regina's donation according to her wishes.
The trial court's conclusion that Regina's donation was made voluntarily is supported by its findings and the evidence presented at trial. Thus, we overrule plaintiff's argument.
C. Expert Witness Testimony
Finally, plaintiff asserts that the trial court erred in its findings that pertain to defendants' expert witness, Dr. Justyna Regan. We disagree.
Whether expert witness testimony is admissible under Rule 702(a) of the North Carolina Rules of Evidence is a preliminary question for the trial judge. E.g., State v. McGrady , --- N.C. ----, ----, 787 S.E.2d 1, 10 (2016) (citations omitted). "To the extent that factual findings are necessary to answer this question, the trial judge acts as the trier of fact ... [and t]he court must find these facts by the greater weight of the evidence." Id. (citations omitted). "As with other findings of fact, these findings will be binding on appeal unless there is no evidence to support them." Id. at ----, 787 S.E.2d at 11. "The trial court then concludes, based on these findings, whether the proffered expert testimony meets Rule 702(a)'s requirements of qualification, relevance, and reliability. This ruling will not be reversed on appeal absent a showing of abuse of discretion." Id. (citation and quotation marks omitted).
Plaintiff asserts that Findings of Fact 21-23 and 30 of the trial court's judgment "merely recite" Dr. Regan's testimony, and are, therefore, improper. As plaintiff correctly notes, "[r]ecitations of the testimony of each witness do not constitute findings of fact by the trial judge, because they do not reflect a conscious choice between the conflicting versions of the incident in question which emerged from all the evidence presented." Moore v. Moore , 160 N.C. App. 569, 571-72, 587 S.E.2d 74, 75 (2003) (emphasis omitted). However, the findings in question pertain to Dr. Regan's knowledge of Polish laws governing private charitable foundations and their purchase of real property, the subjects on which she was tendered as an expert. Plaintiff, on the other hand, proffered no expert witness on these issues; rather, the trial court found that Marek "did not have firsthand knowledge of the Foundation, and relied on information provided to him by an attorney when he travelled to Poland to investigate the Foundation." The court's findings are supported by the evidence presented; accordingly, they are binding on this Court. McGrady , --- N.C. at ----, 787 S.E.2d at 11.
Plaintiff also contends that the trial court erred by failing to make findings regarding Dr. Regan's qualifications to testify as an expert witness. However, plaintiff fails to establish how the court's failure to make such findings impacted its conclusions on the dispositive issues of this case. As such, and given the complex and unfamiliar issues of foreign law involved, we decline to hold that the trial court erred by failing to make findings of fact concerning Dr. Regan's expertise.
V. Conclusion
Having reviewed the abundance of evidence in this case, we hold that: (1) the trial court did not abuse its discretion in denying plaintiff access to defendants' bank records prior to 2010; (2) the court did not err in dismissing plaintiff's fraud claim at the close of all of the evidence, pursuant to N.C. Gen. Stat. § 1A-1, Rule 41(b) ; (3) the trial court did not err in entering judgment for defendants on plaintiff's claims for constructive fraud and unjust enrichment; and (4) the court did not err in its findings regarding defendants' expert witness. Therefore, we affirm the trial court's orders and judgment.
AFFIRMED.
Report per Rule 30(e).
Judges BRYANT and STEPHENS concur.